UNITED STATES BANKRUPTCY COURT

DISTRICT OF SOUTH DAKOTA
ROOM 211
FEDERAL BUILDING AND U.S. POST OFFICE
225 SOUTH PIERRE STREET
PIERRE, SOUTH DAKOTA 57501-2463

IRVIN N. HOYT
BANKRUPTCY JUDGE

TELEPHONE (605) 224-0560
FAX (605) 224-9020

May 18, 2005


Lee Ann Pierce, Esq.
Chapter 7 Trustee
P.O. Box 524
Brookings, South Dakota 57006

John Harmelink, Esq.
Attorney for Debtor
P.O. Box 18
Yankton, South Dakota 57078

  Subject: *In re Twiyla J. Howard*
      Chapter 7; Bankr. No. 04-40424

Dear Counsel:

  The matter before the Court is Chapter 7 Trustee Lee Ann Pierce's Motion for Turnover. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E). This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014. As set forth below, Trustee Pierce's motion will be granted, and Debtor will be ordered to turn over to Trustee Pierce the sum of $2,515.00.

  **Summary.** Debtor Twiyla J. Howard ("Debtor") filed a petition for relief under chapter 7 on March 29, 2004. Debtor filed her schedules of assets and liabilities on April 9, 2004. On her Schedule B, Debtor listed the following personal property:

| Description | Market Value of Debtor's Interest |
|---|---|
| Cash | 33.00 |
| Checking Account | 450.00 |
| Household Goods | 300.00 |
| Books and Pictures | 100.00 |
| Wearing Apparel | 100.00 |

Re: *Twyla J. Howard*
May 18, 2005
Page 2

| Description | Market Value of Debtor's Interest |
|---|---|
| Wedding Rings and Watch | 250.00 |
| Camera | 100.00 |
| 1988 Ford Mustang | 1,400.00 |
| Miscellaneous | 50.00 |

On her Schedule C, Debtor claimed her interests in the following personal property exempt under S.D.C.L. § 43-45-4:

| Description | Claimed Exemption |
|---|---|
| Cash | 33.00 |
| Household Goods | 300.00 |
| Books and Pictures | 100.00 |
| Camera | 100.00 |
| 1988 Ford Mustang | 1,400.00 |
| Miscellaneous | 50.00 |

Neither Trustee Pierce nor any of Debtor's creditors objected to Debtor's exemptions.

On September 2, 2004, Trustee Pierce filed a motion for turnover. In her motion, Trustee Pierce asked the Court to order Debtor to turn over the sum of $4,466.00, representing the amount by which Trustee Pierce alleged the value of Debtor's interests in the following personal property exceeded Debtor's allowable exemption of $4,000.00 under S.D.C.L. § 43-45-4:

| Description | Market Value of Debtor's Interest |
|---|---|
| Cash | 33.00 |
| Bank Account | 594.00 |
| Household Goods | 300.00 |

Re: *Twiyla J. Howard*
May 18, 2005
Page 3

| Description | Market Value of Debtor's Interest |
|---|---:|
| Refrigerator | 100.00 |
| Books and Pictures | 100.00 |
| Camera | 100.00 |
| 1988 Ford | 1,400.00 |
| 1995 Ford | 2,000.00 |
| 1994 Plymouth | 1,250.00 |
| Tools | 100.00 |
| Miscellaneous | 50.00 |
| 2003 Federal Tax Refund | 2,439.00 |
| Total | 8,466.00 |

On September 24, 2004, Debtor filed an objection to Trustee Pierce's motion for turnover. In her objection, Debtor claimed, *inter alia*, that the 2003 tax refund referred to in Trustee Pierce's motion was received on or about March 8, 2004 and belonged entirely to "Mr. Howard,"[1] inasmuch as Debtor was unemployed in 2003; that the 1995 Ford referred to in Trustee Pierce's motion was owned by Paul Lammers; and that the tools referred to in Trustee Pierce's motion were owned by Paul Howard.

The matter was set to be heard on January 11, 2005 but was continued to February 1, 2005 at Trustee Pierce's request and again to March 1, 2005 at Debtor's request. In the interim, on February 25, 2005, Debtor filed an amended Schedule B and an amended Schedule C. On her amended Schedule B, Debtor listed the following personal property:[2]

---

[1] In her objection, Debtor mistakenly refers to her husband as "Paul Howard" and "Mr. Howard." Debtor's husband is named Paul Lammers.

[2] Debtor appears to have included the refrigerator referred to in Trustee Pierce's motion for turnover (Debtor's interest in which Trustee Pierce valued at $100.00) among her "Household Goods," her

Re: *Twyla J. Howard*
May 18, 2005
Page 4

| Description | Market Value of Debtor's Interest |
|---|---|
| Cash | 33.00 |
| Checking Account | 594.00 |
| Household Goods | 400.00 |
| Books and Pictures | 100.00 |
| Wearing Apparel | 100.00 |
| Wedding Rings and Watch | 250.00 |
| Camera | 100.00 |
| 1988 Ford Mustang | 210.00 |
| 1994 Plymouth Voyager | 415.00 |
| 1995 Ford Windstar | 1,510.00 |
| Miscellaneous | 50.00 |

On her amended Schedule C, Debtor claimed her interests in the following personal property exempt under S.D.C.L. § 43-45-4:

| Description | Claimed Exemption |
|---|---|
| Cash | 33.00 |
| Checking Account | 594.00 |
| Household Goods | 400.00 |
| Camera | 100.00 |
| 1988 Ford Mustang | 210.00 |
| 1994 Plymouth Voyager | 415.00 |
| 1995 Ford Windstar | 1,510.00 |
| Miscellaneous | 50.00 |

---

interest in which she valued at $300.00 on her original Schedule B.

Neither Trustee Pierce nor any of Debtor's creditors objected to Debtor's amended exemptions. Debtor was therefore allowed an exemption of $3,312.00 under S.D.C.L. § 43-45-4. *See* 11 U.S.C. § 522(l); Fed.R.Bankr.P. 4003(b).

The matter came on for hearing before the Court on March 1, 2005. Debtor was the only witness called by either party. On examination by Trustee Pierce, Debtor testified that during her § 341 meeting of creditors on April 30, 2004, she told Trustee Pierce that her 1988 Ford Mustang was worth $1,400.00. She also testified that during her § 341 meeting, she told Trustee Pierce that she and her husband also owned a 1994 Plymouth[3] and "probably" told Trustee Pierce that it was worth $2,500.00. She further testified that during her § 341 meeting, she told Trustee Pierce that her husband owned a 1995 Ford Windstar, and after first professing not to remember placing a value on it, that she told Trustee Pierce it was worth $4,000.00. Finally, Debtor testified that she had deposited her "half" of the 2003 tax refund in the bank and that she had $594.00 left when she filed her petition for relief.

On examination by her attorney, Debtor testified that all of the income reported on the 2003 tax return was her husband's and that she was unemployed in 2003. She further testified that in preparing her schedules she had overvalued the 1998 Ford Mustang. Debtor's explanation for the discrepancy was that the "Blue Book" to which she referred when she prepared her schedules only went back to 1992 and that since she was not over her allowed exemptions, it "didn't bother" her that the value listed was $1,400.00. She also testified that the values assigned to the vehicles listed on her amended schedules were "half-values." Finally, she testified that the 1995 Ford Windstar belonged to her husband.[4]

The matter was taken under advisement.

**Discussion.** To determine the amount by which the value of Debtor's interests in the various items of personal property described above may exceed Debtor's allowed exemption of $3,312.00 under S.D.C.L. § 43-45-4, the Court must first determine the value

---

[3] No such vehicle was listed on Debtor's original schedules.

[4] This testimony appeared to come as something of a surprise to Debtor's attorney.

of Debtor's interests in the 2003 tax refund, the 1988 Ford Mustang, the 1994 Plymouth Voyager, and the 1995 Ford Windstar.[5] Each will be addressed separately.

With respect to the 2003 tax refund, the uncontroverted evidence is that Debtor and her husband received that refund on or about March 8, 2004, that Debtor deposited her "half" in the bank, and that she had only $594.00 of her "half" left when she filed her petition for relief on March 29, 2004. The Court cannot order Debtor to turn over what she did not have on the date she filed her petition for relief. Therefore, the only value of relevance to the matter before the Court is the remaining $594.00 reflected on Debtor's amended Schedule B.

With respect to the 1988 Ford Mustang, the Court does not accept the value Debtor placed on her interest in it on her amended Schedule B. Debtor valued her interest in the Mustang – under penalty of perjury – at $1,400.00 on her original Schedule B. She confirmed that value – under oath – at her § 341 meeting of creditors. The explanation she offered at the March 1 hearing for the lower value reflected on her amended Schedule B – that since she was not over her allowed exemptions, it "didn't bother" her that the value she placed on her schedules might not be accurate – is inconsistent with both the declaration under penalty of perjury she signed when she filed her schedules and the oath she took before giving testimony at her § 341 meeting. That explanation therefore carries no weight. Moreover, she waited – without offering any justification for the delay – nearly ten months after her § 341 meeting of creditors, and more than five months after Trustee Pierce filed her motion for turnover, to amend her Schedule B. The Court will therefore hold Debtor to the value she placed on her interest in the Mustang on her original Schedule B.

The Court likewise does not accept the value Debtor placed on her interest in the 1994 Plymouth Voyager on her amended Schedule B. While Debtor did not value her interest in the Voyager on her original Schedule B – because she did not disclose it on her schedules – she did testify under oath at her § 341 meeting that the Voyager was worth $2,500.00. She offered no explanation for

---

[5] Neither party offered any evidence or made any argument regarding the "Tools" listed in Trustee Pierce's motion for turnover. The Court therefore presumes Trustee Pierce has abandoned any claim that Debtor in fact has an interest in those tools.

Re: *Twiyla J. Howard*
May 18, 2005
Page 7

her initial failure to schedule her interest in it and no reasonable explanation for the lower value she placed on her interest in it on her amended Schedule B. She again waited nearly 10 months after her § 341 meeting, and more than five months after Trustee Pierce filed her motion for turnover, to amend her Schedule B. Since Debtor's amended Schedule B reflects a one-half interest in the Voyager, the Court will value her interest in it at $1,250.00.

Finally, the Court does not accept the value Debtor placed on her interest in the 1995 Ford Windstar on her amended Schedule B. Debtor testified under oath at her § 341 meeting of creditors that the Windstar was worth $4,000.00. She offered no reasonable explanation for the lower value she placed on it on her amended Schedule B. She again waited nearly 10 months after her § 341 meeting, and more than five months after Trustee Pierce filed her motion for turnover, to amend her Schedule B. Since Debtor's amended Schedule B reflects a one-half interest in the Windstar, the Court will value Debtor's interest in it at $2,000.00.[6]

Accordingly, the Court finds that Debtor had an interest in the following personal property on the date she filed her petition for relief:[7]

---

[6] The Court is mindful of the fact that Debtor testified at her § 341 meeting of creditors and at the March 1 hearing that her husband owned the Windstar. However, it was listed on her amended Schedule B, and Debtor signed that amendment. Debtor did not produce the title to the Windstar or offer any explanation for the discrepancy between her testimony at the March 1 hearing and her amended Schedule B or for her failure to file a second amended Schedule B. Thus, the Court does not find reliable Debtor's testimony that she has no interest in the Windstar.

[7] The Court's list does not include the "Books and pictures," "Wearing apparel," and "Wedding rings and watch" that Debtor claimed exempt under S.D.C.L. § 43-45-2 on her amended Schedule C. Those items of personal property are not subject to the dollar limits of S.D.C.L. § 43-45-4.

Re: *Twiyla J. Howard*
May 18, 2005
Page 8

| Description | Market Value of Debtor's Interest |
|---|---|
| Cash | 33.00 |
| Bank Account | 594.00 |
| Household Goods | 400.00 |
| Camera | 100.00 |
| 1988 Ford | 1,400.00 |
| 1994 Plymouth | 1,250.00 |
| 1995 Ford Windstar | 2,000.00 |
| Miscellaneous | 50.00 |
| Total | 5,827.00 |

Debtor has been allowed an exemption of $3,312.00 under S.D.C.L. § 43-45-4. Trustee Pierce is therefore entitled to an order directing Debtor to turn over the excess of $2,515.00.[8]

The Court will enter an appropriate order.

Sincerely,

Irvin N. Hoyt
Bankruptcy Judge

I hereby certify that a copy of this document was electronically transmitted, mailed, hand delivered or faxed this date to the parties on the attached service list.

MAY 18 2005

Charles L. Nail, Jr., Clerk
U.S. Bankruptcy Court, District of South Dakota
By_____ INH:sh

NOTICE OF ENTRY
Under F.R.Bankr.P. 9022(a)
Entered

MAY 18 2005

Charles L. Nail, Jr., Clerk
U.S. Bankruptcy Court
District of South Dakota

cc: case file (docket original; serve parties in interest)

---

[8] Nothing in this letter decision or the accompanying order should be construed as barring Debtor from filing a second amended Schedule C to claim up to the $4,000.00 exemption permitted under S.D.C.L. § 43-45-4. *But see In re L.D. Alderson*, Bankr. No. 89-50106, slip op. (Bankr. D.S.D. Aug. 27, 1991).

Bruce J. Gering
Office of the U.S. Trustee
230 S Phillips Ave, Suite 502
Sioux Falls, SD 57104-6321


John E. Harmelink
PO Box 18
Yankton, SD 57078


Twiyla J. Howard
715 Cedar
Yankton, SD 57078


Lee Ann Pierce
Trustee
PO Box 524
Brookings, SD 57006